## ALEXANDER M. STEWART et al., Appellants, v. ST. LOUIS & SUBURBAN RAILWAY COMPANY, Respondent.

**St. Louis Court of Appeals. Argued and Submitted April 3, 1911. Opinion Filed May 2, 1911.**

1. **ACCOUNT STATED: Assent to Correctness of Account Essential: Promise to Pay: Implied Promise.** In order to constitute an account stated, there must be assent to the account as correctly setting out the amount due from the one party to the other; and a promise to pay such account, express or implied, is necessary, but when the account is assented to as correct, the law, in the absence of evidence to the contrary, implies a promise to pay.

2. ———: ———: ———: ———. A promise to pay cannot be implied, in the face of a direct and positive refusal to pay and a denial on the part of the debtor that he owes the balance claimed to be due, as shown in the account exhibited to him.

3. ———: ———: ———: ———: **Sufficiency of Evidence.** In an action on an account stated, evidence that, on plaintiff's exhibiting the account to defendant, the latter, while admitting the correctness of the items, denied owing any indebtedness to plaintiff, claiming that, under a certain contract between plaintiff and defendant, plaintiff had insured defendant against loss for any accident that might occur in doing the work out of which the account arose, and that a workman had received an injury in doing such work and had brought suit against defendant, and that defendant refused to pay the balance claimed by plaintiff as due, unless plaintiff would take care of such workman's claim, was insufficient to establish an account stated, there being no promise to pay, direct or implied.

4. **APPELLATE PRACTICE: Theory at Trial.** The appellate court will dispose of a case on the theory on which it was tried below; so that, in an action on an account stated, where it was not proved that the account had been stated, a verdict for plaintiff will not be sustained or the theory he established his right to recover on a *quantum meruit* and that the verdict, therefore, was for the right party.

Appeal from St. Louis City Circuit Court.—*Hon. George H. Williams*, Judge.

157 App.—15

AFFIRMED AND REMANDED.

*Seneca N. Taylor* for appellants.

(1) Where the verdict and judgment were for the right party and no prejudicial error was committed, it is the duty of the appellate court to reverse the order of the trial court granting a new trial. Crawford v. Stock Yards, 215 Mo. 394; Simonton v. Transit Co., 207 Mo. 718; Deschner v. Railroad, 200 Mo. 310; Schmidt v. Railroad, 163 Mo. 645; Richardson v. Drug Co., 92 Mo. App. 516; Campbell v. Railroad, 86 Mo. App. 67; Lumber Co. v. Christophel, 59 Mo. App. 80. (2) Where parties meet and go over their accounts and strike a balance in favor of one of them, to which the other assents as correct, this is sufficient to establish an "account stated." Bambrick v. Simms, 102 Mo. 162; Koegel v. Givens, 79 Mo. 78; Powell v. Railroad, 65 Mo. 661; Railroad Co. v. Kimmel, 58 Mo. 84; Kronenberger v. Binz, 56 Mo. 121; Fisse v. Blanke, 127 Mo. App. 422; Investment Co. v. Bank, 96 Mo. App. 125; Mulford v. Caesar, 53 Mo. App. 263; Burger v. Burger, 34 Mo. App. 153; Hawkins & Co. v. Long, 74 N. C. 781; Watkins v. Ford, 69 Mich. 357; Graham v. Chubb, 39 Mich. 417; Hendricks v. Kirkpatrick, 67 N. W. 759; Clark v. Kelsey, 41 Neb. 766; Claire v. Claire, 10 Neb. 54; Tuggles v. Minor, 76 Cal. 96; Auzerias v. Naglee, 74 Cal. 60; Brewing Co. v. Hunstock, 77 Miss. 493; McCall v. Nave, 52 Miss. 494; Stebbins v. Niles, 25 Miss. 267; James v. Fellows, 20 La. Annual 116; Barboury Co. v. Foundry Co., 99 Ala. 47; Ware v. Manning, 86 Ala. 238; Burns v. Campbell, 71 Ala. 271; Concord Apt. House Co. v. Refrigerator Co., 78 Ill. App. 683; Lane & Bodley Co. v. Taylor, 97 S. W. 441; Weed v. Dyer, 53 Ark. 155; Railroad Co. v. Camden, 47 Ark. 541; Lawrence v. Ellsworth, 41 Ark. 507; Rand v. Whipple, 75 N. Y. Sup. 745; Robbins v. Downy, 18 N. Y. Sup. 100; Weigel v. Steel Co., 51 N. J. Law 446; Cochrane v. Allen, 58 N. H. 250; McClellan v. Crofton, 6 Me. 307; Toland v. Sprague, 12

Pet. 333; Oil Co. v. VanEtten, 107 U. S. 334; Wiggins v. Burkham, 10 Wall, 129; Volkening v. DeGraff, 81 N. Y. 268; Normandin v. Grator, 12 Ore. 505; Hooker v. Owens, 17 Ore. 523; Holmes v. Page, 19 Ore. 232; Voight v. Brooks, 19 Mont. 375; Trueman v. Hurst, 1 T. R. 42.  (3)  To constitute an account stated does not require an express promise on the part of the debtor to pay the balance found against him.  The law conclusively presumes a promise to pay such balance.  Bambrick v. Simms, 102 Mo. 162; Koegel v. Givens, 79 Mo. 78; Burger v. Burger, 34 Mo. App. 153; Watkins v. Ford, 69 Mich. 357; Hendricks v. Kirkpatrick, 67 N. W. 759; Claire v. Claire, 10 Neb. 54; Concord Apartment House v. Refrigerator Co., 78 Ill. App. 683; Lane & Bodley Co. v. Taylor, 97 S. W. 441; Lawrence v. Ellsworth, 41 Ark. 507; Rand v. Whipple, 75 N. Y. Supp. 745; Robbins v. Downy, 18 N. Y. Sup. 100; Cochrane v. Allen, 58 N. H. 250; Toland v. Sprague, 12 Pet. 333; Wiggins v. Burkham, 10 Wall. 129; Chace v. Trafford, 116 Mass. 529; Jaques v. Hulit, 16 N. J. Law, 38; Heinrich v. Englund, 34 Minn. 395; Voight v. Brooks, 19 Mont. 375; 1 Am. and Eng. Ency. of Law (1 Ed.), 110; 1 Cyc. 372; also 689-690; 2 Greenleaf on Ev. (9 Ed.), sec. 127, p. 129.  (4)  The pleadings and evidence justify the verdict and judgment on the theory of an action on a *quantum meruit*.  Jordan v. Transit Co., 202 Mo. 426; Schaefer v. Green, 68 Mo. App. 172; Legg v. Girardi, 22 Mo. App. 149; Besson & Co. v. Goodman, 147 Fed. 887; Beers v. Kuehn, 84 Wis. 33-34.

*G. T. Priest* for respondent.

(1)  The trial court's action in sustaining defendant's motion for a new trial was right, because the evidence fails to show an account stated in that:  (a) There was no balance struck.  (b)  That there was no admission on behalf of defendant, either express or implied, that there was a balance due and owing plaintiff.  (c)  That there was no promise by defendant, either ex-

press or implied, to pay plaintiff a balance found due and owing. (d) The evidence shows affirmatively that defendant steadfastly and persistently, from beginning to end, denied that there was a balance due and owing plaintiffs and continually refused to pay plaintiffs. State v. Hartman, 20 Atl. 67, 51 N. J. L. 446; Harris v. Woodard, 40 Mich. 408; Ryan v. Gross, 48 Ala. 370; Railroad v. Kimball, 58 Mo. 83; Harley v. Goodfellow, 12 New Brunswick Reports (1 Hannay), 335; Evans v. Verity, Ryan & Moody Reports, 259; Reinhardt v. Hines, 51 Miss. l. c. 347; Hall v. Morrison, 3 Bosworth Reports N. Y. 527; Calvert v. Baker, 4 Meson & Welsby Reports, 416. (2) Plaintiff now contends that the verdict may stand on the theory that the petition states a cause of action for quantum meruit. This cannot be maintained, because—(a) The petition does not state any such cause of action. (b) If it did then there is no evidence to support such a claim. (c) Plaintiff tried the case below upon the theory of a fact stated and he is bound by it now. State v. Hartman Steel Co., 20 Atl. 67.

STATEMENT.—Plaintiffs by their petition, after averring the character of the parties, "for their cause of action aver that at the instance and request of defendant, they furnished during the year 1904 and 1905, certain labor and material for the doing of certain alterations and additions to defendant's premises situated at DeHodiamont, in the city of St. Louis, and state of Missouri, the particulars of which will appear by an 'Account A,' herewith filed, and that the total amount of the labor and material so furnished by plaintiffs was of the fair and reasonable value of $46,159.05; that the defendant furnished to plaintiffs certain material and did certain work and made certain payments on account, for which defendant is entitled to a credit of $41,551.43, a balance due and unpaid of $4607.62, the particulars of all of which will appear by account 'A' herewith filed;

that thereafter, to-wit, on the 18th day of September, 1905, plaintiffs and defendant had an accounting as to all work and labor furnished and done, as set forth in said account 'A,' and as to all payments and credits to which defendant was entitled upon said accounting, and that then and there a balance was struck between plaintiffs and defendant, and it was then and there agreed that there was still due and unpaid to plaintiffs on account of said labor and material, the sum of $4607.62, and then and there said sum of $4607.62 became an account stated between plaintiffs and said defendant in regard to all the matters set forth in said account 'A' and the said defendant then and there agreed to pay plaintiffs said balance within a reasonable time, but defendant has wholly failed and neglected to pay said balance or any part thereof. Wherefore plaintiffs demand judgment against said defendant," in the sum named with interest thereon since September 18, 1905, and for costs. Attached to the petition is the account referred to as Exhibit "A," consisting of many items, debit and credit, the last credit item being dated September 18, 1905, a cash credit of $2500.

The answer is a general denial.

A trial was had before the court and a jury, plaintiffs' evidence consisting of the account attached to the petition and oral testimony of Mr. Lohmann, manager for plaintiffs, and of Mr. Taylor, attorney for plaintiffs.

Mr. Lohmann testified that the work under the contract which plaintiffs had with defendant was completed sometime prior to September 18, 1905; that after it was completed he attended a meeting, at which meeting were present the witness and Mr. Taylor, the attorney for plaintiffs, and Mr. Walsh, representing defendant, together with Mr. Chandler, one of defendant's attorneys, and the original of the account Exhibit "A" was taken up, the original being the same as Exhibit "A," except that the credit of $2500 cash, credited September 18th, had not then been entered on the ac-

count. Mr. Lohmann testified that they had the meeting
to make a demand for the payment of the money due
them or to file a mechanic's lien on the property, and he
also testified that the amount stated as the balance was
correct. Asked what the representatives of defendant
said at that meeting, he answered, "They refused to pay
the account on account of a clause in the contract. . . .
Their reason for refusing to pay the account was—their
claiming that we were responsible for the accident, in
accordance with a clause in the contract." He further
testified that at that meeting they did not go over the
items because that had been done at prior meetings with
their engineer, with Mr. Walsh and others, Mr. Walsh
being the vice-president or manager of defendant. At
the prior meetings the balance struck was $7101.62, in
accordance with the statement submitted at that meet-
ing, and was correct and there was no objection to it.
The witness continued: "After the conference—at the
conference, rather, it was agreed to make us a payment
on account of $2500, which amount we were to have de-
ducted from the original statement submitted; leaving a
balance of $4607.62." On cross-examination, Mr. Loh-
mann was asked if at that meeting Mr. Chandler, one of
the attorneys for defendant, and Mr. Walsh, represent-
ing defendant, had not absolutely refused to pay any-
thing because they said that plaintiffs were not living up
to their contract on account of an injury to an employee
sustained at the buildings. Witness answered: "I said
they refused to pay us on account of a clause in the con-
tract concerning accidents; yes." Asked if they (de-
fendant's representatives) had not not said that they
refused to pay this amount stated here (in the account),
witness answered, "They did not dispute the amount but
refused to pay it." That they had refused to pay it on
the ground that they had a contract with defendant un-
der which plaintiffs had assumed all the risk of accident
which might occur of somebody getting hurt as the re-
sult of their operations and for any judgments arising

in the construction of the coal bins and other improvements on the property. Asked by counsel, "So they continually refused to pay this claim on that ground," witness answered: "But they did pay us $2500 after that meeting, on account." Witness was then asked, "And at the same time, while they refused to pay you any part of this money—the defendant refused to pay you any part of this money on the grounds I have stated, at the same time they paid you $2500?" To which he answered, "Exactly. Their first position was that they refused to pay us anything on account, but after discussing the matter awhile, they agreed to pay us $2500, which they did pay us on account." Asked if they had ever agreed to pay the $4607 balance, witness answered, "They never refused to pay us." Asked if they did not refuse to pay it, witness answered, "That end was left open until—." Witness was again asked if he meant to say that at that meeting defendant agreed to pay plaintiffs $2500. He answered, "Yes, sir." We quote the remainder of his testimony under cross-examination as set out in the abstract.

"Q. But said that they would refuse to pay the $4607, because they agreed that the bond that you had given in the case would meet their requirements in case they were held liable for the demands of this man Clark (the man who had been injured), for the balance of the damage? A. We never made any agreement about that man or the balance of damage.

Q. Or the balance of damage? A. No, sir.

Q. But they did refuse to pay the $4600? A. At that time they did; yes, sir; that is true.

Q. At that time they refused to pay the $4600? A. Yes, sir; and they refused to do so, refused to pay it ever since then.

Q. And have refused to pay it ever since? A. Yes, sir.

Q. Now, there can't be any mistake about that? A. There can't be any mistake about that."

Mr. Taylor, examined on part of plaintiffs, testified that acting as attorney for plaintiffs, he went to the office of Mr. Chandler, one of the attorneys for defendant, on two occasions. On one of these occasions, Mr. Pierce, another of the attorneys for defendant, was also present, along with Mr. Chandler and himself. Asked what was said and done at these meetings, Mr. Taylor answered that the items of debit and credit were all gone over and "a bit later" plaintiffs agreed to accept the $2500. It was stated by Mr. Chandler and by Mr. Pierce that the amount of the items was not in dispute but both these gentlemen contended at the time that they ought not pay this sum, the balance claimed on the account, on the ground of a clause which was contained in the building contract between plaintiffs and defendant in regard to plaintiffs assuming certain risks. Witness contended in these meetings that that clause had no application to the injuries that had happened to Clark, stating why he thought so. The representatives of defendant contended to the contrary. They had quite a discussion along that line and the matter was left open. At the time of the meeting, the time had nearly expired for filing a mechanic's lien and plaintiffs were threatening to file one and advised defendant's representatives of their intention to do that. Within a day or two after this first meeting witness and Mr. Lohmann, representing plaintiffs, and Mr. Chandler and Mr. Walsh, the latter representing defendant as its general manager, met at Mr. Chandler's office. Mr. Taylor, the witness, asked particularly whether there was any objection to the items of the account. Mr. Walsh said, "No;" that the items were all right, "and the only excuse we have for not paying it is that we think it oughtn't to be paid until the matter of Clark's suit was settled." Mr. Taylor said in response to this that this was no excuse for not paying the amount, because under his view there was no liability on the part of his client for negligence in the matter of the claim of Clark. Finally Mr. Walsh proposed to pay

$2500 on the account and not have them file the me-
chanic's lien.  Thereupon he did pay the $2500, leaving
the balance of $4607.62.  To quote Mr. Taylor:  "It is
true that Mr. Walsh said there and then that he didn't
think he ought to pay anything on the $7107.62 until the
Clark matter was disposed of; . . . that the Union
Iron & Foundry Company was to share a part of the sum
necessary to make a settlement with Mr. Clark, and that
the Suburban Railway Company was to share or contrib-
ute a sum to settle with Clark, and that we (plaintiffs)
should share or contribute a sum, dividing it into thirds.
That they proposed thus to settle with Clark.  I said,
'We are absolutely not liable for a cent, and we will not
contribute a cent; and I then told Mr. Walsh that un-
less something was paid on account of this balance,
which was conceded to be due us, providing we were not
liable under that construction contract, we would file
the lien; and he said he would pay $2500 and reserve the
$4607.62.  I said, 'Well, I will let the balance stand un-
til after the Clark case is tried in the circuit court, but
not a day longer.'  That then, after that, I wouldn't be
willing to leave it lay any longer. . . .  I said, 'if you
pay us $2500 on account, that will enable us to settle
with the Union Iron & Foundry Company, because they
also have a claim against us, and if you pay that amount
we can settle with them, and the balance which you con-
cede to be due on this account stated, we will postpone
until after the trial of the Clark case, but if judgment
goes against you in the Clark case on the trial had in
the circuit court, I will not postpone bringing this suit
of ours after the Clark case has been tried in the circuit
court.'  The $2500 were paid."  The first conversation
that witness gave, he said, occurred on the 17th between
himself and Mr. Chandler and Mr. Pierce.  Mr. Walsh
was not then present.  It was arranged that they were
to see Mr. Walsh and they saw him the next day or a day
or two afterwards, and on that day the $2500 were paid.
On cross-examination Mr. Taylor testified that when Mr,

Walsh was present and they took up the matter, which was on the day following his conversation with the attorneys, Mr. Walsh stated that he thought the balance, $7107.62, ought to be retained. Witness insisted that he would file the lien unless defendant paid all or at least part of it, whereupon Mr. Walsh said he would pay $2500 and witness said he would allow the remaining part of the account to remain open and not bring suit until the Clark case had been tried in the circuit court. Asked if at the conversation of September 18th, Mr. Walsh and the counsel who represented defendant took the stand that they would pay no part of the $4600 and told him that if he wanted to test the matter to bring suit and they would defend the suit and have the matter determined, witness stated that no such conversation had taken place at the meeting of the 18th; that that statement was made by counsel in a talk witness had with them before he saw Mr. Walsh. The position of counsel was, they would not pay anything on account at all but when they met with Mr. Walsh it was agreed that there was money enough available to pay the $2500 on account but he (Mr. Walsh) insisted on witholding the remainder of the account to cover the supposed obligation under the bond and in settlement of the Clark claim. Witness then went on to explain why he was willing to delay suit, one of the reasons being that if they could get any payment on account to bring it down within the jurisdiction of the St. Louis Court of Appeals, they could get speedier action on the case than if it was obliged to go to the Supreme Court, the jurisdiction of the court of appeals at that time being $4500. Asked if he intended remitting the difference between $4500 and the $4607.62, and if he would waive the interest, witness answered that he would have waived any interest rather than have delay. He was then asked this question: "You wouldn't do that if you brought this action on an account stated, because it was over the construction of that clause regarding assuming risk under

the contract?" To which he answered, "No, not at all; it would have nothing on earth to do with it. On an account stated it would not involve any consideration there. Because, in the other, I would have set up all of the items of debit and credit; that is, each item involved in the account going to make up the whole total, and that would involve a great deal of detail. But on an account stated, you get it as the stated balance that is conceded to be due." On further cross-examination on matters not now necessary to notice, principally going to the witness's reasons why he considered his client not liable to contribute to any damages recovered for the Clark injury, this witness concluded his testimony and plaintiffs rested. We have, as we think, given substantially all the testimony on the part of plaintiffs, important in determining the fact of an account stated.

Thereupon defendant prayed the court to instruct the jury that under the law and the evidence their verdict must be for defendant. This was refused, defendant duly excepting.

As to the testimony for the defense, it is sufficient to say that Mr. Walsh and Mr. Pierce, who were its only witnesses, testified to what had taken place in these conversations between the parties. Mr. Chandler, having removed from this state, did not testify. There was practically no material difference in the version given by them and that given by the witnesses for plaintiffs. Mr. Walsh testified that while they made no objection to the various items of the account, they denied, and had in all of these conversations denied, that they owed the balance claimed, and had refused to pay that or any part of it until a determination of the suit which Mr. Clark had brought for damages alleged to have been sustained by him. Mr. Walsh claimed that under the contract which defendant had with plaintiffs for the erection of the building, plaintiffs had insured it against loss or damage for injuries to employees engaged in the erection of the building. At no time, Mr. Walsh testified,

had defendant admitted that the $4607 was a correct balance, nor at any time had they agreed to pay the balance claimed. Mr. Walsh further testified that at the interview at which he was present, there was nothing said about delaying settlement until the Clark case was settled; that while they agreed on the balance as correct, they did not consider it was due; that in accordance with the contract between plaintiffs and defendant' it (defendant) claimed that the money was not due. On redirect examination Mr. Walsh repeated this, that at no time had he admitted that the amount was due; but he admitted that the account was correct as to its items; that the work had been done; but he had at all times denied and refused to admit that any balance was due.

Mr. Pierce's testimony was substantially along the line of that given by Mr. Walsh, Mr. Pierce insisting for his client that it would make no settlement until the Clark matter was adjusted between them and that until that was done they could not determine what was due and he distinctly repudiated any acknowledgment of any balance in any amount being due. This is practically all the testimony in the case.

At the instance of plaintiffs the court instructed the jury, in substance, that if they believed and found from the evidence that, during the years 1904 and 1905, plaintiffs furnished certain labor and material at defendant's request for constructing certain alterations and additions to defendant's premises and that when the work was completed plaintiffs and defendant met on the 17th or 18th of September, 1905, for the purpose of adjusting their accounts touching the same "and after going over their mutual accounts ascertained and struck a balance showing that the plaintiffs were entitled to receive from defendant on account of said work and material the sum of $7107.62, above all payments previously made on account thereof, and that the defendant thereupon paid to the plaintiffs on September 18, 1905, the sum of $2500, and then the balance of $4607.62 became a balance due

the plaintiffs from defendant upon an account stated, then the jury will find a verdict for the plaintiffs and assess their damages at the sum of $4607.62, with the interest on such sum at six per centum per annum from September 18, 1905. And if the jury should find that the account was thus stated between plaintiffs and defendant, then the jury are further instructed that it is wholly immaterial whether there were certain other matters in controversy between the plaintiffs and defendant which were not adjusted at that time, and also immaterial whether the defendant declined to pay the plaintiffs the balance thus ascertained until a certain contingent liability of plaintiffs to defendant was first finally determined; provided the jury find further that the plaintiffs did not agree to such condition."

Defendant duly excepted to the giving of this instruction and requested the following instructions which the court refused to give:

"1. The court instructs you that in this present action you are not to consider the question as to whether or not defendant received any material or labor from plaintiff company and might be indebted to it for some amount or other. The only issue before you in this case is whether or not on September 18, 1905, plaintiff and defendant had an accounting, one with the other, and if there was a balance struck and found in favor of the plaintiff company and that defendant company promised to pay that amount."

"2. The court instructs you that if you find and believe from the evidence that plaintiffs presented to defendant an account and there was a balance struck and defendant admitted that the account shown and the balance were correct, but denied that the amount shown by the balance struck was yet due and owing, then your verdict must be for defendant."

The jury returned a verdict in favor of plaintiffs for the sum of $5838.09. In due time defendant filed a motion for a new trial, assigning ten grounds for the mo

tion: first, because the verdict is against the law; second, because the verdict is against the evidence; third, because the verdict is against the law and the evidence; fourth, because the court erred in refusing to give defendant's peremptory instruction in the nature of a demurrer to the evidence, offered at the close of plaintiffs' evidence in chief. The seventh assignment is to the error of the court in giving illegal instructions to the prejudice of defendant; the eighth, to error in refusing to give proper and correct instructions asked by defendant; tenth, because upon the whole case the verdict should have been for defendant. It is unnecessary to notice the other grounds set out in the motion for new trial. After consideration of the motion, the court sustained it on the first four assignments of error. Plaintiffs excepting to this action, duly perfected appeal to this court. As in the report of the case the points made by the respective counsel will undoubtedly be set out, it is unnecessary to repeat them here.

REYNOLDS, P. J. (after stating the facts).—In 1 Am. and Eng. Ency. (2 Ed.), p. 437, an account stated is defined as "an agreement, between parties who have had previous transactions of a monetary character, that all the items of the accounts representing such transactions are true and that the balance struck is correct, together with a promise, express or implied, for the payment of such balance. The importance of an account stated is due to the fact that it operates as an admission of liability from the person against whom the balance appears, or, in the language of the common law, 'the law implies that he against whom the balance appears has engaged to pay it to the other,' and on this implied promise or admission an action may be brought." In the same book at page 444, it is stated: "The meeting of the minds of the parties upon the correctness of an account stated is usually the result of a statement of accounts by one party and the acquiescence therein by the other. The form of this

acquiescence or assent is immaterial. It need not be in writing, nor signed. It may be express, or implied from the conduct of the parties, but there must in every case be proof in some form of an assent to the account rendered, that is, a definite acknowledgment of indebtedness in a certain sum." In the same book, at par. C, pp. 440, 441, it is said: "An account stated must be founded on previous transactions of a monetary character creating the relation of creditor and debtor between the parties. These transactions may have consisted of mutual or cross demands, or of a single item only. When the account is stated with reference to a single item, that item must be of a character which creates an actual debt between the parties; but when there are cross demands, and the relation of debtor and creditor already subsists, and the parties strike a balance, they may include therein debts not due *in praesenti*, and equitable as well as legal demands." Among other cases for this is cited State ex inf. v. Hartman Steel Co., infra.

In Abbott's Trial Evidence (2 Ed.), p. 565, it is said: "An allegation of account stated is supported by evidence that the parties actually met and considered and agreed upon the items and the result. . . . To prove an account stated the evidence must justify the inference of an agreement as distinguished from a mere admission. . . . A qualified acknowledgment is not enough; but an unqualified admission of a single item is competent; and obection to one item alone may imply admision of the rest." And at page 568 it is said: "If defendant's express assent to the account is proved, he may prove in his own favor all that was said by him in the same conversation that in any way qualifies or explains the statement already in evidence, or modifies the use that plaintiff might otherwise make of it. . . . If express promise or assent is not shown by direct evidence, the account is not conclusive, but only shifts the burthen of proof. The inference of assent may be repelled not only by direct evidence of objection made

before the account was rendered, or even after acting on it, but by any circumstance tending to a contrary conclusion." Abbott defines an account stated (p. 563, par. 1) to be, "An agreement between persons who have had previous transactions, fixing the amount due in respect of such transactions, and promising payment. As distinguished from a mere admission or acknowledgment, it is a new cause of action, and hence, if appearing to have been made since the action commenced, is not competent evidence."

Prof. Greenleaf says: "In support of the count upon an *account stated,* the plaintiff must show that there was a demand on his side, which was acceded to by the defendant. There must be a fixed and certain sum admitted to be due; but the sum need not be precisely proved as laid in the declaration. . . . The admission itself must be voluntary, and not made upon compulsion; and it must be absolute, and not qualified. But it need not be express and in terms; for if the account be sent to the debtor, in a letter, which is received but not replied to in a reasonable time, the acquiesence of the party is taken as an admission that the account is truly stated." [2 Greenleaf on Evidence (16 Ed.), sec. 126.] "The original form, or evidence of the debt, is of no importance, under the count upon an account stated; for the stating of the account alters the nature of the debt, and is in the nature of a new promise or undertaking. . . . It is not necessary to prove the items of the account; for the action is founded, not upon these, but upon the defendant's consent to the balance ascertained." [Ib. sec. 127.]

One of the cases cited by Greenleaf in support of the text of section 126 as above, is that of Stenton v. Jerome et al., 54 N. Y. 480. In that case it is said (pp. 484-85), in substance, that to make an account stated it takes two parties, the debtor and the creditor, and there must be a mutual agreement between them as to the allowance and disallowance of the respective claims and

as to the balance as it is struck upon the final adjustment of the whole account and demands of both sides. "Their minds must meet as in making other agreements, and they must both assent to the account and the balance as correct. . . . But in all cases there must be proof, in some form, of an express or implied assent to the account rendered by one party to another, before the latter can be held to be so far concluded that he can impeach it only for fraud or mistake."

Another case cited in the note to section 126, Greenleaf, supra, is that of Volkening v. DeGraaf et al., 81 N. Y. 268. There Chief Justice FOLGER (1. c. 270 and following), says: "An account stated is an account balanced and rendered with an assent to the balance express or implied; so that the demand is essentially the same as if a promissory note had been given for the balance. [Bass v. Bass, 8 Pick. 187.] By the same authority, an account closed is not an account stated. [And see Mandeville v. Wilson, 5 Cranch, 15.] There must be an assent by the party to be charged, either express or fairly implied. [Stenton v. Jerome, 54 N. Y. 480.] The emphatic words of a count upon an account stated were, in former days, *insimul computassent*, that they, the plaintiff and defendant, accounted together; and the count went on to say that on such accounting the defendant was found in arrear and indebted to the plaintiff in a sum named, and being so found in arrear, he undertook and promised to pay the same to the plaintiff. [2 Chitty's Pl. 90; 1 id. 358.] Now there is no evidence in this case from which a jury would be allowed to find or infer that the defendants ever assented, expressly or impliedly, that they were indebted to the plaintiffs in the balance or sum claimed, and undertook, by express or implied promise, that they would pay it. . . . Whatever was their agreement, and however they have performed or failed to perform it, it is clear that they (defendants) never accounted together

157 App.—16

with the plaintiff, and on a balance being found against them, undertook to pay it. It is clear that no account was ever rendered showing a balance, that they ever by express promise or impliedly, agreed to pay."

Another case referred to in the note to the section above quoted is that of The Equitable Accident Insurance Company v. Stout et al., 135 Ind. 444, where, citing among other cases Volkening v. LeGraaf, supra, the Supreme Court of Indiana says (1. c. 455) : "Where the action is upon an account stated, and the evidence fails to show the assent of the parties to the balance by express agreement or fair implication, there can be no recovery."

In Terry v. Sickles, 13 Calif. 427, a decision by Judge Cope, concurred in by Judge Field, afterwards Associate Justice Field, it is said that in an action upon an account stated it is necessary to show that there was a demand in favor of the plaintiff which was acceded to by the defendant.

In State ex rel. Weigel v. Hartman Steel Company, 51 N. J. L. 446, it is said (1. c. 452) : "So it appears that an assent to the balance of the sum total of the account need not be expressed in any formal undertaking, but, from acquiescence in the claim, it may be inferred that the account is correct, and that the sum total is due. But any such assent, whether express or implied, must not be qualified by any condition or contingency which relieves it from the character of a promise to pay the amount." The court, referring to the case of Evans v. Verity, R. & M. 230, and to the action of the court in that case in refusing to set aside a nonsuit, quotes the court as arriving at this conclusion because the promise relied on "is not an unqualified acknowledgment but only an admission that ten pounds would have been due if something else had not happened."

In Zacarino v. Palloti, 49 Conn. 36, 1. c. 38, Abbott's Trial Evidence, p. 458, is approvingly quoted in

support of the proposition that "An account stated is an agreement between persons who have had previous transactions, fixing the amount due in respect of such transactions and promising payment." So also Chitty on Contracts, p. 562, as holding that, "It must appear that, at the time of accounting, there existed some de- mand between the parties respecting which an account was stated, that a balance was then struck and agreed upon, and that the defendant expressly admitted that a certain sum was then due from him as a debt." To like effect 2 Greenleaf on Evidence, section 126, is also quoted.

In Loventhal & Son v. Morris, 103 Ala. 332, it is held (l. c. 336) that, "An account becomes stated when a specified indebtedness. is admitted to be correct. The mere admission of indebtedness alone will not render an account stated, but the admission must be the sum charged, and claimed to be due." Quoting many au- thorities, the court says: "These decisions of our own state are conclusive, that an account where there are debits and credits does not become stated, until there has been an adjustment, and an assent to the conclu- sion."

What may be called the leading cases in this state on this matter of action on account stated are the cases of Cape Girardeau & State Line R. R. Co. v. Kimmel, 58 Mo. 83, and Powell v. Pacific Railroad, 65 Mo. 658. In the former case it is said (l. c. 84), that the action in suit was on account stated and that suing on that, whatever transactions there may have been had between the parties, became merged in this settlement or account stated, "and a new obligation then attached to the party found in arrear, which the law construes into a promise that he would pay the balance so agreed to be due. To maintain an action upon such premises, the first essen- tial is, that the balance be acknowledged by the party to be charged. If a plaintiff seeks to recover for money received by the defendant and not accounted for, he

must make those facts distinctly appear in his pleading. But if, in his petition, he elects to rely on a settlement made and a balance struck and agreed upon, he cannot in his proofs abandon that ground of recovery and fall back upon the original subject-matter of the settlement. He may prove the earlier transactions, if necessary, as a foundation for the settlement and in order to explain it. But the settlement itself, or rather the defendant's assent in some shape to a balance found due, is none the less essential, as the very bottom upon which the right of recovery rests. These principles are as old as the law books and as familiar to the profession." Referring to the petition in the case as defective in its omission to state the defendant's promise—"which, though implied in law must be pleaded as a fact—to pay the balance found against him," the court holds that this defect was not objected to and was cured by the verdict and is immaterial.

The second case above cited, Powell v. Pacific Railroad, was also an action on account stated. In that case our Supreme Court (l. c. 660) distinctly affirms the correctness of an instruction, given at the instance of the defendant, which, in effect, told the jury that an account stated in the law, "is an account settled between the debtor and creditor therein, in which a sum of money or a balance is agreed on, and an acknowledgment by one in favor of the other, of a balance or sum certain to be due, and an express or implied promise to pay the same by one to the other;" and that the plaintiffs cannot recover in the action unless they have proven by evidence, an account stated between plaintiffs and defendant. The court also approved an instruction asked by plaintiffs and refused by the court, to the effect that it was not necessary to constitute an account stated that the admission of the demand should be made in express terms; that if the plaintiffs' assignee had rendered his account to defendant, exhibiting the items thereof and the amount due to him, and if the same was

never objected to by the defendant, the acquiesence of de-
fendant therein is to be taken as an admission that the
account was truly stated. Citing Greenleaf, as we have
before quoted that author, that to support an action on
account stated, plaintiff must show that there was a de-
mand on one side which was acceded to on the other, our
Supreme Court holds that there must be a fixed and cer-
tain sum admitted to be due.

Without going into a fuller quotation or citation of
authorities, it is sufficient to say that all of them, leading
authorities, establish beyond all question the proposi-
tion that to constitute an account stated, there must be
assent to that account as correctly setting out the amount
due from the one party to the other, and that the amount
stated is due and owing from the one to the other. When
this is shown the law, in the absence of evidence to the
contrary, implies a promise to pay. All the cases hold
that there must be a promise to pay, either express or im-
plied. Not a case cited by the learned counsel for appel-
lant holds to the contrary. We are referred to no case
by that industrious counsel which holds that a promise
to pay is implied in the face of a direct, positive, re-
peated refusal to pay and denial on the part of defendant
that he owes plaintiff the balance claimed to be due as
shown in the account exhibited to him. Stating an ac-
count is one thing: agreeing on the account as stated is
another. As said by the authorities and in all the cases,
the action is not then upon the account, but in assump-
sit upon the promise to pay; that promise either express
or implied.

In the case at bar, as appears by the undisputed evi-
dence in the case, when the account of plaintiffs was ex-
hibited to defendant, while defendant admitted that the
items therein stated were correct and correctly set out, it
expressly and clearly denied that it owed the balance
claimed. It refused to admit that the balance claimed
was due from it to plaintiffs, claiming that under and by
virtue of a certain contract between it and plaintiffs,

plaintiffs had insured defendant against loss for any accidents that might occur in doing the work out of which the account arose, it appearing that in the progress of the work a workman had been severely injured and had brought suit to recover damages for the injuries sustained. This was developed beyond question by the testimony of plaintiffs: was confirmed by that of defendant. It clearly appears by plaintiffs' own evidence that when the managers of plaintiffs and defendant and their respective attorneys came together to discuss the account, defendant's agents and attorneys, in unmistakable terms, refused to settle the balance claimed by plaintiffs as due, unless plaintiffs would agree to take care of and settle what defendant claimed was their proper and proportionate amount of the damage claimed by this injured workman; in other words, while admitting the correctness of the items in the account so far as they went, the admission was coupled with a distinct denial of any indebtedness by defendant to plaintiffs on that account. This was so far from being an admission that it would pay, or an implied promise to pay, on which alone an action on account stated can be based, that the demurrer to the evidence interposed by defendant at the close of plaintiffs' testimony should have been given.

The learned counsel for appellants claims before us that the judgment is for the right party, inasmuch as if it is found that the account stated has not been proven, plaintiffs can then recover on a *quantum meruit*, as in assumpsit, for work and labor done, materials furnished, etc. We dispose of this by saying that there was no evidence introduced whatever on any such theory; the case was tried on no such theory; the instructions given at the instance of plaintiffs, those asked by defendant and refused, proceeded upon no such theory. We are to dispose of the case on the theory upon which it was tried. Counsel himself, when testifying as a witness gives a very correct definition of the difference between suing on an "account stated" and on an open account. We

have quoted the testimony he gave on which we base this There was no effort to prove the account by items.

The instruction given by the court at the instance of plaintiffs, tested by the principles and rules we have set out, was erroneous—fatally so: those asked by defendant correctly stated the law and it was error to refuse them. Cutting back of this, however, the demurrer interposed by defendant at the close of plaintiffs' evidence, should have been given. Nor did defendant, by any evidence introduced by it, help out the case for plaintiffs; to the contrary it was in confirmation and corroboration of the evidence introduced by plaintiffs.

The action of the learned trial court in sustaining the motion for a new trial was correct, both for the reasons given by him as also for those we have set out.

The action of the court in setting aside the verdict is affirmed and the cause remanded. *Nortoni* and *Caulfield, JJ.,* concur.

